Walker et al. Good morning, Your Honors. Ruth Masters on behalf of Duprece Jett. Duprece Jett, Damian McKissick, and Earl Walker were all convicted of Hobbs Act robbery and of attempted robbery under 18 U.S.C. 2113a. Each of us today is going to address some arguments we raised on behalf of all of the defendants and also arguments unique to our own clients. To begin, there is unanimity with the prosecution that the conviction on count two, attempted robbery, is not supported by sufficient evidence. The defendants each moved for acquittal and the government provides no argument as to why acquittal is not the proper remedy. In the least, each defendant is entitled to acquittal on count two and remand for resentencing. Mr. Jett, in an argument joined by the other defendants, additionally argues that he is entitled to retrial on count one, the conspiracy count, because of improperly admitted testimony from Agent Guy in which the FBI Special Agent Guy identified him as one of the robbers on surveillance video. The prosecution also made improper closing argument regarding that evidence and there was cumulative error. The district court concluded that Mr. Jett's counsel opened the door to the testimony of Mr. Guy and alternatively that it was admissible under federal rule of evidence 701. Both reasons are an abuse of discretion. The open the door rationale is an abuse because the court failed to give Mr. Jett's counsel's question their plain meaning and place them in context. Mr. Crawford, who is Mr. Jett's attorney, had been asking Agent Guy if he had uncovered or discovered someone who was a victim of the robbery and when he was asked to restate that question, he said, have you uncovered any person who can identify Dupree's Jett as being one of the robbers? When Agent Guy responded, well I disagree with you, meaning I have uncovered someone, the court said that opened the door to Agent Guy testifying that he was the one who had uncovered himself, apparently, as someone who could identify the robber. Why wasn't there an attempt by the lawyer to cure that poorly worded question? I think we could probably agree it was it was poorly worded. Why wasn't there an attempt to close that door with a reworded question focused on what he wanted to? Your Honor, I think that there was because this follow-up question, and we have this in our brief on page 12, is were you involved in the photo spreads that were shown to witnesses from the bank? And that should have been enough to reorient towards what he meant. Victims. Had anybody identified my client with a photo spread? But even that isn't specific as to victims and that's what the issue was, that his question was broad enough to include anybody. Your Honor, I understand your point, but the question is whether it was an abuse of discretion then to still admit Agent Guy's identification testimony without doing any further examination of the context of the question, because it's clear from the two questions surrounding that response. But didn't the judge do just that? Didn't she really focus on the questions in the surrounding part? And she's the one who said that you've opened the door on this, there's some confusion, and then she even limited what testimony she would allow the agent to give. Your Honor, I respectfully don't believe that that's what happened. Certainly she was considering it, but then she didn't go ahead and balance the probative value versus prejudicial impact of that testimony, and she didn't further... Did the lawyer ask the judge to do the 403 balancing? He did. Right after that happened, he stated that the testimony was highly prejudicial and given by someone who had not previously encountered Mr. Jett, or repeatedly encountered Mr. Jett, so he would have had any familiarity. And is that sufficient to say it's highly prejudicial for the court to engage in the 403 balance? Yes, it is. Under Federal Rule of Evidence 103, which requires that you call to the court's attention your issues, and that objection specifically said highly prejudicial, and which I don't think that's amenable to any other meanings, and also said... But anyway, go ahead. And also said why it was highly prejudicial, because it was identification testimony by someone who hadn't previously had experience with the defendant outside of the context of the investigation, and was usurping the role of the jury. As I read this transcript, the issue was sort of evolving as both the testimony and the argument unfolded, which is not unusual in the heat of trial, but I assume that the defense lawyer here was quite surprised at Agent Guy's response to the question, because of course we know from the record that there were no eyewitness IDs made in this case, and that was the answer that he was expecting. And so when the agent either misunderstood or misconstrued the question, or saw an opening to get his own ID in the back door, he took it and surprised defense counsel, and then counsel sort of tried to get the examination back on track, the cross back on track, and it was only later at sidebar when the prosecutor sought to get the ID in based on this door opening theory that the various objections were put on the record. And when the defense lawyer lost the door opening argument, he tried to make an argument under 701, and then when he lost that, he tried to make an argument under 403, and it was, I mean, that's what often happens in trials. So I don't fault the defense lawyer for not doing the best he could given the evolutionary nature of this examination and argument, and I'm deeply concerned about the rationale for admitting this testimony, because really the evidence is not there. And perhaps you could address that. Yes, Your Honor. I mean, basically the only thing that Agent Guy could potentially testify to was, I think he might be a little thinner, and that was not enough. I think he might be a little thinner if he stood up, I could tell. That speculation, that doesn't meet the standards of rule 701 that the evidence be rationally based upon perception, that's just guessing, or that it helps the jury. And he only had 15 minutes cold exposure to him during the execution of a search warrant. It's not like he knew him for a longer period of time. Right. And absolutely, that's very troubling, because it's the course of the investigation while executing a search warrant, which is exactly our point, or one of our points about the prejudicial impact. It is highly prejudicial. And the sort of ultimate inference here is that Mr. Jett's counsel got up and said to Agent Guy, who was the bank robbery coordinator of this investigation, do you think it was my client? That's just not a rational explanation, and Mr. Guy did not have any better idea of what, any better ability of comparing Mr. Jett to the surveillance video, given no change in, no... There is substantial, so what? There is substantial evidence in this case in identifying him, isn't there? Your Honor, I think the issue here is that it is a tremendously prejudicial error, and it was compounded at closing argument. I'm very much into my rebuttal time, but if I may. Thank you. May it please the Court, Counsel. Good morning, Your Honors. My name is Joanna Christensen, and I represent Damian McKissick in this case. I'm sorry, your client is who? Damian McKissick, Mr. McKissick. And tying into my co-counsel's argument, I'm going to talk about Agent Vail's testimony that straddled permissible and impermissible testimony throughout two days of his time on the witness stand. Most of his testimony, a good portion of it at least, was his experience as the case agent. However, midstream, the government suddenly asked him what he thought the text messages between McKissick and Jett meant. That is where we crossed into the abuse of discretion in this case, and that testimony should not have been entered, and it was abuse of discretion to enter it. It seemed like Agent Vail was even confused as to whether or not he was giving expert testimony or fact testimony. I think everyone was confused. I think Defense Counsel was the one making the objection, saying this is not expert testimony. Agent Vail said, I'm testifying as the case agent, and the government said, no, he's testifying through his expertise. And there are many problems with the way this happened. Part of it is the location, the district court local rules that don't identify experts. Well, she's already been admonished by me. I'm aware this court has said... But this happened before that. This trial happened before that, but I will inform the court that yesterday morning I looked at the court's local rules, and that's still one of the local rules. So that's a problem. I think that that has kind of stemmed through the lack of objection, probably prior to because Defense Counsel knows that it doesn't really matter because she's not going to identify them as experts or not experts. But in this case, it does matter. In Tingle, it turned out to be not plain error because that person likely would have been qualified as an expert. He was testifying about something that he had been trained to testify about. Agent Vail... Ms. Bischoff, is your objection here that the slang words were not susceptible to and Agent Vail was not qualified to give that testimony or both? It's both. He was not qualified. It's unlike the drug slang cases where those agents have spent time listening to the defendant's talk in drug code, have talked to co-conspirators about what those words mean. There were no cooperating witnesses in this case, so there was no one for Agent Vail to talk to and say, hey, this is what we were talking about. The other side of that is that these are words that, given the context, it was the jury's duty to determine how they fit in. So essentially what Agent Vail was doing is saying, this is what they meant when they said that, that he was making factual findings for the jury. But isn't it appropriate for an expert, let's assume he was qualified, isn't it appropriate for an expert in order to help the jury tell what those words might mean that a jury is not Obviously my main focus is he just was not qualified, but also these words, given the nature, one of the interpretations was, give me a time. And time was spelled wrong, but I think most people could tell that the word T-Y-M-E meant time. The fenobounce, which comes from fit and a bounce, and I think that some people, I don't think you are an expert. Rather than my personal experience using that word, as you can tell as I pronounce it, but the context is that the jury probably could have put this together and made the same conclusion as Agent Vail. We authorize law enforcement personnel to use that experience over a period of time to give that admonition to the jury and tell them what these words mean. Absolutely, but there was no experience with these words. Well, that's the main problem, not that this is not an appropriate subject for expert testimony, but that, and he may have been qualified, it's just that the prosecutor didn't lay the foundation for his qualifications. Right, that's the main thrust of our argument, is that he just, there wasn't enough qualification. Perhaps, and I don't know Agent Vail personally, he does have experience in car theft and what the word whip means, but that isn't in the jury. The jury certainly doesn't know that, doesn't know how to evaluate that testimony. The other main thrust, of course, is the dual nature of his testimony, and that was extremely confusing to the jury. It was confusing to the court, I'm sure, if you read the transcript, because you're going along and he's talking about things he actually did, very common case agent lay testimony, and all of a sudden he's interpreting the words of the defendants. So, and this court has cautioned that this court judges need to make sure the court, that the jury understands what type of testimony an agent is giving, because dual testimony is very common with case agents and police officers, in order to evaluate it. The police officer has an aura of reliability, and that just kept flowing through this case based on the lack of distinguishing between lay and expert opinion. I did note in our brief the intra-circuit conflict, and I said that I don't know if this is a vehicle for the court to address it, I'm not sure it's necessary, because the district court didn't warn the jury at all. So we really don't necessarily get into what kind of warning was good, what kind of warning was bad, as in the Christian, Moreland issue. And do you think the Moreland or the Christian way is the better way to proceed on dual agent testimony? I agree with the which really lays it out. I think Moreland assumes the jury may be able to distinguish between the two types of testimony better. This case is a fit for the Christian case, because there was so much back and forth with Agent Bale. Did the defense ask the judge for an instruction along the dual testimony lines, or to make sure that she informed the jury that at times he was testifying as an expert? No, no, and that I do believe stems from the local rule that the judge uses in this case, is that that would have gone directly against her local rule of not identifying expert testimony. There are jury instructions about opinion testimony, and one person was identified individually as giving opinion testimony, the DNA expert, and then there was a general opinion testimony as well, but there's no mention of who gave which kind of testimony. So I actually think the instructions were more confusing to the jury. I will note before my time for rebuttal is completely gone, that we're also challenging the lack of overt act instruction. That's a difficult issue because this court has a line of cases saying that an overt act is required. The Supreme Court has a line of cases that, even in my mind, really questions this court's ruling, but we are in a place where this court has standing precedent that would require an overt act. And the Ninth Circuit has one that goes the other way. I'm sorry? And the Ninth Circuit has one that goes the other way. Yes, yes, there is a definite circuit split. You wouldn't want us to follow the Ninth Circuit. No, I prefer this court follow it itself, particularly in this case, but unless the court has further questions, I'll reserve the remainder of my rebuttal. Thank you. Good morning, Your Honor. My name is Mark Walker. The district court twice recognized the weakness of the prosecution's case vis-a-vis Earl Walker, and that was before the bombshell the prosecution dropped on count two. Thus, this already tenuous conviction has been further gutted by the developments on appeal. The prosecution correctly concedes that count two, the conviction on count two, cannot stand. The implications of this step for McKissick and Jett are slight, but for Walker, it's huge. The attempt count was the only connection between Walker and this conspiracy. With it gone, that single thread is severed. The prosecution's response on this point... Well, the conviction's gone, but the facts are not. Well, Your Honor, that's... unclear as far as if the conviction is gone, then those facts we would contend, at least the fact that they were circling the credit union, would be excluded. Additionally... What would be the basis for the exclusion? Well, Your Honor, I recognize that the conduct could be, but again, the fact that that was the overt act that was included in the indictment... What did he have in his car? He had a gun, Your Honor. Well, I should say... He did have a gun, plus other things. Yes, yes, and I'm admitting that there are facts here, obviously, that don't bode well for Mr. Walker, that he was driving a vehicle... And he took him on a high-speed chase? Yes, Your Honor. Which is, under clear circuit law, evidence of guilt, or consciousness of guilt? Yes, we don't know what happened in that car. Mr. McKissick had the gun, or at least the DNA... His DNA was on the gun, so we don't know if there were threats by Mr. McKissick. We don't know what happened in the car, but admittedly, Mr. Walker did lead authorities on a high-speed chase. So, while that's obviously not nothing, there's not evidence, substantial evidence, of Mr. Walker knowingly joining this conspiracy. There is association, certainly. There's presence. Mr. Walker was present at Mr. Jett's home, along with a number of other individuals, the morning of December 12th. But other than that, authorities had no clue who Mr. Walker was when they arrested him. They admitted that. They had been monitoring, conducting surveillance on Mr. Walker, excuse me, Mr. Jett, and Mr. McKissick, for three months. And Mr. Walker never entered the picture during that time. But to be convicted of the conspiracy count, he doesn't have to have agreed to have participated in the all of the charge over at X, or be in it from the beginning. He could have come in at the end. That's true, Your Honor. And I recognize that, from a defendant's perspective, conspiracy is a very difficult doctrine, especially, as Your Honor knows, a minor role, coming late into the game, that those aren't offensives. So I'm the first to acknowledge that. But again, I would simply ask that the unique facts of this case, given the fact that the conspiracy count was part of this case, was part of the instructions, and obviously was a conviction, the fact that that is being removed from the picture, along with Mr. Walker's 12th hour involvement, 12th hour role, I would argue that judgment of acquittal has collateral estoppel implications. And if those implications are that, and again, this frankly was not fleshed out by either side, in the brief, or in the district court, but if there are collateral estoppel implications, then arguably, those facts could be excluded. Would you agree that, under the law, your client did not have to be convicted of count two, the substantive offense, in order to be convicted of count one? I would agree with that. So how can there be collateral estoppel, then, if he didn't, if it doesn't matter if he's convicted on count two or not? Well, Your Honor, I think it's, I think again, it goes to the fact that this was argued to the jury, that this was a separate count. In all honesty, there's not, that I could find much guidance on this issue, as far as a count being withdrawn after the conviction. But doesn't that go against your argument, the fact that it was argued as a separate count? The judge gave the clear instruction that you should consider each count of the indictment separately, and the evidence on each count as to each defendant separately. Doesn't that go counter to your argument? I would respectfully say no, based on the fact, and I'm not sure if this is a non-answer to your question, but the jury was supposed to consider these facts, and under the law, there was no attempt to enter the premises, which is a requirement under 2113. There was no threat of violence and or intimidation. So those are the necessary elements. For count two? Yes, correct. And so the jury was supposed to consider those, but they obviously didn't because, as the prosecution acknowledges, there was no attempt to enter the premises. There was no threat or intimidation or violence. So those are the necessary elements, and the jury was ostensibly supposed to consider those, and they apparently did, and they still found Mr. Walker, along with the other two defendants, guilty. So I'm not sure if that's a good answer to your question, but I guess what I'm trying to say is that the other count obviously was included, and it frankly should not have been, and under the law, the jury should have acquitted them on that. So again, I'm recognizing that this doctrine is like quicksand, and once there's one step in, the defendant is pretty much done. So again, the facts as far as what happened post-arrest, or I should say when the sirens first went on, I admit that Mr. Walker exhibited qualities that suggest he was part of the conspiracy. If I can also just briefly segue into the Bruton issue, again, I think that the statement that Mr. McKissick makes to Mr. Walker as far as what they were doing, that's imperative because that's the only evidence. There's no testimony from any confidential informant or other conspirator or any other witness which sheds light on what Mr. Walker knew concerning the conspiracy. And that statement, again, post-arrest, in which Mr. McKissick essentially, he incriminates Mr. Walker. But how would the jury know based on what was presented to the jury, which was a redacted version of his statements? How would they know that he was talking to your client in the other room? I watched the video, and there's no – which I think was presented to the jury, wasn't it? Yes. There's no indication on the video of who he's talking to, if he's even talking to somebody, if he's talking to himself. There's no mention of Mr. Walker on there. How would the jury reasonably come to the conclusion that it was your client? Certainly. The fact that it was sanitized, obviously, helps Mr. Walker. His name is scrubbed from there. But there's only two men who are arrested. The jury know that. It's Mr. Walker and Mr. McKissick. The jury's aware that Mr. Jett is nowhere to be found. Essentially, he's sitting at the library. So the jury knows that these two are the only men who are arrested. And looking at the content of the statement, it's, hey, they didn't catch us. It's all, they didn't get us. They didn't catch us. He's obviously referring to the authorities. So he's not talking to the police. He's not pleading his case to authorities. Was there evidence that they were within earshot, even though they were in separate rooms? No, there is no evidence that they are in separate rooms. And as I understand it, Mr. Walker is on the other side. And there's also, when I say other side, I mean other, he's on the other wall. But it's not an open… And it's a concrete wall. As I understand it, yes. Yes. And there's no evidence that he, that Mr. Walker even heard these remarks. So again, the fact that there's, the jury knows that these two men are arrested, obviously after this high-speed chase. They know it's immediately after this high-speed chase. And again, Mr. Jett's nowhere to be found. So again, he's not pleading his case to authorities. He's essentially trying to instruct Mr. Walker as to how to handle this situation. This wasn't hearsay, though, was it? It's not often for the truth of the matter stated. Your Honor, I don't know. I don't know that. I'm sorry. If there are no further questions? Thank you. Thank you, Your Honor. Mr. Reese? May it please the Court, Brian Wright of the United States. Before moving on to address some of the Court's concerns that you've expressed, I want to refocus about what's important in this case. This case has always been about the compelling videographic and photographic evidence that the government introduced showing Mr. Jett and Mr. McKissick committing the three robberies. None of the defendants make any objections about those videos or those photographs being admissible. Those were the most compelling, most salient pieces of evidence. And you don't have to take the government's word for it. You can take the judge's word for it. He said it was clearly Mr. Jett and Mr. McKissick in those videos. You can even take the anonymous tipster who saw one photograph and said that was clearly Mr. McKissick. So that is what is most important about this case. Whatever other objections the defendants might have, anything is rendered harmless because it's inconceivable that the jury would have seen those videos and not convicted based on those videos that they didn't think themselves that the people shown were Mr. Jett and Mr. McKissick. That being said, I want to sort of go in reverse chronological order with the concerns or what the defendants have argued. First, starting with the Bruton. I think I have to start with an apology in preparing for the argument. I realize that I sort of left my best argument behind because I did not make it clear that the Mr. McKissick statement was edited. Because all references to Mr. Walker were removed, it puts that squarely in the Richardson v. Marsh category of edited statements are not Bruton violations. So we think Richardson v. Marsh answers the Bruton violation claim clearly. And even if not, it's neither powerfully incriminating nor is it explicitly incriminating. Was there any evidence from which the jury could infer he was talking to Walker? They were arrested together. But when he's making this statement I'm talking about because they're in separate rooms. Apparently it's not an open air set of rooms with dividers. They're apparently concrete walls dividing. Right. So I think the only way they're – in general, no. I would say the only way they could if there's the inference that they were arrested together. However, as my recollection of the trial, it wasn't necessarily said then. And so it could have – that statement could have been made later when all three of them had been arrested. But I do think it's somewhat fair to say that those two were arrested together. So either he's talking to himself or he's – I mean, I think there's an inference there that perhaps he was talking to Mr. Walker. And do you recall if the judge gave an instruction at that point that the video was admissible? I do not, Your Honor. I apologize. Only as to one defendant. But I do not. Well, the point of the redaction was to eliminate the evidence on the face of his statements that he was talking to Walker, right? Yes. Yes. I mean, that's the whole point of redacting it, so that it's admissible against him and not cross-inculpating. But you've just told us that the jury could infer that he was talking to Mr. Walker based on the fact that they were arrested together, even though by the time he makes the statement, they're in separate rooms that are separated by concrete block that you can't hear through. I think it's unlikely, and I think there's a big, big leap there. I guess I'm a little uncomfortable saying there's no chance they could have made that inference because they were arrested together. I think it's unlikely. And I think under, and not I think, but for sure under Bruton, Richardson v. Marsh and Gray, an inferential incrimination is not a Bruton violation. So even if there is that inference there, it's still only inferentially incriminating, and it's sort of like three steps inferentially incriminating. But that said, I don't want to go too far, because I do think there's the possibility that the jury could have inferred based on them being arrested at the same time, even though it was a concrete wall. But even if that inference was made, it's still not a Bruton violation. Second, moving on to Mr. McKissick's argument about the testimony. First, Judge Caney, I want to answer your question. I understand the court has to decide that she was on the four corners, but from a practical standpoint, we just had a three-week trial in front of the same judge, and she designated witnesses as experts. She did designate. She did designate witnesses as experts in front of the jury. So while the rule is still up on the website, I understand that's not. Well, I think there was a date on it. They may change it at a particular time. I'm not concerned with that. If she's conducting the trials the way we suggested, that's fine. Right. And in this case, of course, as noted, does predate Tingle. And again, I know we're in the four corners of this case, but the judge has changed her practice as of two weeks ago based on Tingle. I was going to ask you that question anyway. So the message has been sent. We'll put it that way. On the evidence, I would say I think Mr. McKissick is somewhat in a pickle here because there's really two ways to take this. He can say that the words were indecipherable, so therefore they're in need of an expert, in which case the testimony is fine. Or he can say that, and I think he does in his reply, that these are common terms, so they're not in need of an expert. But didn't Agent Vale go way beyond just interpreting the few slang words that may need expert definition? Wasn't he interpreting the context of the conversation and the objection was made at that point? So I think with the we're going hunting, there was a little bit of that. Before then, when the conversation is going on and he starts interpreting what both sides were saying without any reference to these slang terms, and he was not a participant in the conversation who could have testified about his understanding of it, but he was going way beyond saying this is what he was saying to him without reference to the slang. How could that be permissible under the rules of evidence? So I think at that point there was an objection, and I don't want to say it was sustained, but that sort of testimony I think cut off after the objections, and then it was reframed back to the expert in the training experience with the whip and a bounce. So to whatever extent Your Honor has a problem with that line of questioning, I think that in effect that objection was sustained, even if it wasn't said. The objection was not sustained. That's when they went into the separate area. Right, so I'm not saying it was in effect sustained because the government never returned to that line of questioning, I don't believe. After the sidebar colloquy, the government reframed as asking all the questions under the agent's training and experience, and then asked about the whip and a bounce and those sorts of things, which I think are clearly susceptible to expert agent testimony. Would you agree that it would be improper for a case agent to testify about the meaning of a conversation that he was not part of that didn't involve any slang terms? I think the case agent as a fact witness can testify in giving some context to the conversation. But that's giving context versus saying and interpreting what they meant in the conversation. That's two different things. I agree that distinction is generally true. And that's why I would go back to if the agent was testifying about terms that were obvious or apparent, then Mr. McKissick's argument runs right up against harmless error. And I think that's true for everything he said, because whether it was a car, fin, a bounce, none of these things are really terribly relevant or terribly compelling to the crimes at hand, especially when compared to the surveillance videos and the other corruption. That's really what you have is harmless error in this. Well, I don't want to say it's the only thing we have, but it certainly is an extremely strong argument. The things we've raised, the only cover you have is harmless error. Well, if the court thinks that is the only cover we have, we think that this is almost the strongest harmless error we could have because we have videos. You have to judge from your questions whether you think that. So if that is the case, I think it's difficult to conceive of a better harmless error case when the government introduces videos of the defendants committing the crimes. I think that is essentially the most compelling direct evidence we could ever have. And I would keep going back to the judge saw those videos and said it was clear. The anonymous tipster said so too. The jury clearly had no problem with it. I think it's really difficult to imagine that any of these, I don't want to say small war, but somewhat ancillary claims would have overridden the jury's own opinion about what they saw in the video. Before we leave this subject, you haven't addressed the foundation for the expert testimony, which was pretty skimpy. So I think skimpy may be a fair, I think it's probably a fair determination of that. I think it could have been more robust. But generally speaking, I think the district courts and this circuit usually treat an agent's expertise as encompassing the ability to testify to slang terms. So while I think the government could have gotten… If he or she has had experience. Well, he is an FBI agent that does violent crime. And these are somewhat… I think they are slang terms that are in need of explanation. But I think they're somewhat general slang terms that would run the gamut of criminal jargon. So I think that it's somewhat encompassed in an agent's… How do we know that? I mean, they're common terms but inscrutable in context. And the whole point of admitting this testimony from the prosecution standpoint is to disambiguate them for the jury. So we need to know more about what the agent's specific expertise in this kind of street language and criminal gang language when it comes to auto thefts, which is what the translation was, if we can call it a translation, which I think is what the whole point was. So I would say that in an ideal world, I think that the foundation could have been more robust and it might have been more helpful. That being said, as a general proposition, we believe that being an experienced FBI agent with training and classes in this same sort of criminal area will at least generally lead to the presumption that they know general slang terms. And I think everyone agrees that these are somewhat general slang terms. They're not terribly specific or targeted to any… It's not as if they're as nuanced as some very small specific area of criminal law. This is just generally criminal lingo or jargon. So someone that has experience dealing with criminal world, criminal discussions between each other is likely to understand these terms. And again, I don't mean to beat a dead horse on it, but the definition of whip and fin of balance is just so minuscule compared to the compelling evidence we have. I know that I'm probably beating the harmless error to death, but I think it's worth beating to death because of how compelling it is and how I really think the evidence the defendants are talking about is somewhat ancillary. Shouldn't the judge have identified for the jury here when Agent Vale was testifying as an expert versus as a fact witness? So that really kind of gets up to Moreland and Christian butting heads. And again, I would go back to in the recent case we had, the same judge did that. But this case, she did not. She did not in this case. I agree. In this case, she took more of a Moreland path, and the defendants didn't really request any more than that. In the more recent case, she took the Christian path. I mean, members of this court have disagreed which path is better to take, so I think it's difficult to say that was error here. And do you know if the defense asked for a dual agent testimony instruction? I don't believe they did. They asked for the lay opinion instruction which was given, but I do not believe that they asked for a dual witness instruction. If the court has no further questions on that, I would move on to Mr. Jett's argument. Judge Sykes, you expressed concerns about the ID testimony and the foundation laid to that. I would start with this court's precedents say that the foundation only requires some basis that the witness is better capable of identifying the defendant than the jury. Here, there are two bases provided. First of all, the agent saw Mr. Jett. So you're not relying on the door opening argument anymore? Yes. No, we think the door was open, and we think it's harmless error, but trying to squarely address your foundation. I'm concerned about the door opening ruling too. That was flawed. Okay, then I'll move on to that second. But the foundation, it only requires some basis, and we have two bases here. First, we have the temporal proximity, so the agent saw him within three days of the robbery where the jury saw him a year and a half later. So that is some basis that he would be better capable of identifying Mr. Jett than the jury. Number two. But how could that be when the agent himself testified that there really wasn't much of a difference? Maybe there was a little difference in weight, but you might have an argument there if there was some drastic physical difference from the way the defendant appeared in court versus at the time of the video. But here, the agent admitted, and maybe to the surprise of the government, but the agent admitted that there really wasn't much of a difference. So this court's precedents say that even a small change is sufficient, and the agent did say he was a little thinner, which constitutes at least a small change. Beyond that, we think the temporal... What case, I'm sorry, says that a small change is okay? Jackson Earls. It's cited in the government's brief, but I think it's in Sormer. Those are cases where there were lapses of time between the commission of the crime and the apprehension of the defendant. So the passage of time justified some deference to the district court's ruling that this was appropriate testimony to explain the difference in the defendant's appearance. Here we don't have a marked difference, as you yourself seem to be acknowledging when you say that these guys were dead ringers for the people on the videotapes. So that's sort of an admission that there wasn't that much of a difference in their appearances. So you can't really use that as a justification for getting this ID in. So there is a passage of time. Agreed it's not a passage of time, but there's a passage of time from the robbery to the trial, which I think is relevant. Right, but the Earls case, or maybe I'm mixing up which one is which, or maybe it was the Jackson case, but one of the cases there was a five-year delay where the defendant was on the line in Panama living under an assumed identity and had changed his appearance. And so there was a strong justification for getting in this non-transactional ID. This is a non-transactional ID. So we agree. Certainly we don't have as strong a foundation as that. We don't think that sets the minimum either. We think that a little change and or passage of time, we actually think the passage of time is sufficient by itself either way. For getting in a case agent's ID off of a surveillance video, that's very powerful testimony for a case agent to sit there on the witness standing court and say, oh, yeah, those are the guys on the tape. So I think under this court's precedence it was fine. Now, if the court doesn't think so, again, I think it's especially worth noting that the government didn't intend to go there. We weren't there because we and the district court believed the door was open. And that was a very aggressive reading of that line of questioning and flawed. So I think that the first question, I agree, didn't open the door. But I think the second one did. The second question didn't limit it to any people that had been robbed or victims. And the key phrase is no person. It has to be read in context. It's clear what the defense attorney was cross-examining about, which is that there were no eyewitnesses who identified these defendants. So I think it's clear that that was the defense counsel's intention. But best intentions can still lead to misleading. And that's the only reasonable interpretation of even the second question, that is it fair to say that you've uncovered no one who can identify my client, which means no eyewitness, somebody who was there. And you have to read it in the context of the questions that came before and the questions that came after. And the questions that came after clearly sought to identify his awareness of any victims that had identified her client or his client, it's Mr. Crawford, I think, from a photo array, anything. That's the contents of this cross. And it would have been apparent to anybody who was paying attention. So the reason the government doesn't think that can be the standard is because I think that allows some gamesmanship and to ask a – I don't think that was true here. But if in context you're asking these questions and you snipe in a question that is a little broader and then – which I think is not intentionally, but I think that is what unintentionally happened here. The questioning started with any of the victims of the robbery, but the next question said no person without the limiting robber. So that question, the answer to that question was no. I didn't read this transcript that way. It looked to me like a case agent who saw an opening and took it. I think the case agent was answering the second question as it was presented to him. He was construing it in a way that was favorable to the prosecution, to try to get an ID in that you weren't planning on admitting because it was otherwise inadmissible. So I think that he was answering the specific question presented to him. And in context, I think we can quibble about that. But that one particular question did not limit it to victims, and it said no person. I think that's the key phrase. You've uncovered no person who can identify my client. Coming on the heels of a question that was clearly aimed at eyewitnesses. So again, I think this is why this is pretty common cross-examination to start here and go here, and I think that easily could have been read that no victim – As a rephrasing of the question, not an expansion of it. He asked for a rephrasing of the question. So I think that is a fair interpretation, but I think the other interpretation is also fair. I think the key phrase that a person in the courtroom would have heard from that is no person. I think in flashing lights, if you ask that question, the jury and people in the courtroom are going to hear no person, which was not true, and that is how the judge took it as well. It is true that the investigating officers uncovered no person who could identify these defendants. The fact that the case agents could make that identification based on their review of the surveillance video isn't responsive to that. It's a non-responsive answer. We don't think uncovered is doing quite that much work, especially coupled with no person. We think no person is the emphasis of that question. There was a question posed to him about what he had changed. He said facial hair and gained a bit of weight. Yes, he said he was a little thinner. From the video, I gather, to the trial. Yes, from the video slash the identification. In other words, he said that's the way he looked in the video, and now he's gained weight. We think that is sufficient foundation for what this court has said is only some basis is required, which is one of the two reasons, including opening the door, that we think this testimony is admissible. If not, back to the dead horse, what this court said in Jackson footnote 5, I believe, is it's really difficult that, yes, maybe the agent's testimony is compelling, but jurors and people aren't going to take. If the jury didn't think the two people in the videos were Jett and McKissick, they wouldn't have convicted irrespective of what the agent said. Confirmation bias. They heard it from the case agent's mouth. It confirms what they saw with their eyes. It's powerful. Right there, what they saw with their eyes, and what they saw with their eyes were Mr. Jett and Mr. McKissick. Right, we can't get in their heads. Right, but again, we know one unbiased party there, who we know we have heard what was in her head in the judge, and she said it was clearly them two. With that, the court has no further questions. I would just wrap up again by saying the surveillance videos here prove their case. The judge found it was clearly established. The defendants have not made any objection to that testimony, nor have they mustered any reason why those videos didn't show them. If a picture speaks a thousand words, the picture speaks one word here, and that's guilty. This court should affirm. Were the videotapes played for the jury before Agent Guy's testimony? Would they have seen them? Or did his testimony come first? I believe that the videos were played first, but I don't want to say that for sure. I believe so, but please don't quote me on that. Thank you. How much time? This was supposed to be a trial with 12 jurors, not 13. The government not only had an FBI agent identify Mr. Jett as the person on the surveillance video, but the government prosecutor got up at closing argument, and after urging the jury to compare Mr. McKissick to the surveillance video, told the jury, and I quote, we had Brian Guy tell you the other individual was Dupreece Jett. And when Mr. Jett's counsel responded on his closing that that was biased, the government doubled down and said, well, whatever, Agent Guy saw him before you did, and he said his weight changed a little. I thought the defense attorney inoculated against that line of closing argument fairly effectively with the Bill Belichick argument about that's like asking him to interpret the calls, et cetera. So I thought he did a good job of inoculating against that, attempting to minimize the damage from that testimony in a way that the jury could grasp as lay people. That might be true, but then the prosecution gets up on rebuttal and says, you could use his testimony, his identification to help you and yours, because there's one thing that Mr. Guy had, or Agent Guy had, that you all don't have. He saw them about three days afterwards, but his appearance hadn't changed. Was there an objection? Did the defense object to that argument? The objection did not, so this is reviewed under plain error. But we believe that is a plain error, because it was a fundamental denial of due process, of having the jurors make that identification for themselves, and that is not harmless error. That really is a fundamental issue that took the key decision, was that Mr. Jett on those videos, away from the jury. It's certainly put an incredibly heavy thumb on the scale. If the court has no further questions, we ask for count two to be acquittal on count two, and a retrial on count one. Thank you, counsel. Ms. Christensen. Thank you, Your Honor. I have two basic points in rebuttal. The first one is I am very glad if the district court has changed her policy about this. That means defendants from the future will not have this problem. However, my concern right now is Mr. McKissick, and how the error infected the trial regarding Agent Bale's testimony. And it's also, of course, not in the record that the judge has changed this. And if it was, it really doesn't matter, because the damage has been done to Mr. McKissick and Mr. Jett, and Mr. Walker, to a certain extent. My other comment is about overwhelming evidence, which is something that I have to deal with every time I come up here and raise a trial issue. Of course the government thinks there's overwhelming evidence. They prosecuted three defendants. They wouldn't have done it if they didn't think there was. Of course I think there is not overwhelming evidence. And in comparison to other cases, this is not an overwhelming evidence case. You have videos, yes. Videos where both defendants in the videos are wearing disguises, and you have an agent guy who essentially tells the jury, I'm telling you that's who they are. We're prosecuting these guys. That's who's in the video. Agent guy testified several different times, and I think the videos were interspersed into his testimony. I also can't tell you exactly when they fell. But that cuts into the overwhelming evidence, because what the government's relying on is these videos, and our argument directly cuts toward that evidence. The government is not relying as much on the cell phone evidence, which was certainly circumstantial, but not compelling enough when you don't have any eyewitness who can identify these men. Was there evidence of the disguises discovered? Evidence of the disguises discovered? No. There were some items found in a burn pit in Mr. McKissick's property. However, none of those directly matched what was seen on the video. So that evidence is kind of a wash. So there was not that. For Mr. McKissick, of course, he's in the car that's being driven at a high speed away from the last. So they found that evidence. Yeah, they found evidence in there. That was not directly tied to one of the videos, because no one ever entered that bank. So I disagree that there's overwhelming evidence. There are cases where people don't wear disguises, and bank tellers say, that's the guy, that's the guy, that's the guy. That's overwhelming evidence. We don't have that in this case, and I ask the court to reverse and remand from the trial. If not that, then re-sentencing on count one. Thank you. Thank you, counsel. Judge Sinead, to answer your question, there was no instruction from the district court on McKissick that said trial transcript 636 to 639. Your Honors, I know I'm out of time, but I would just briefly point out the prosecution's response on the Bruton issue is disconcerting. They do at least concede that there is an inference that he's talking to Mr. Walker, but this is not a peripheral point. This is a Sixth Amendment right, a Sixth Amendment violation that's at stake. And while the district court's ruling may adhere to the letter of Bruton, it doesn't adhere to the spirit. And I would point to Gravy, Maryland, which we cite in our opening brief at page 27, in which the court says that if a confession is facially incriminating, that's enough. That's a Sixth Amendment violation. And again, unless Mr. McKissick is simply talking to the wall, I think it's pretty clear that he is talking to Mr. Walker. So at the least, we would ask for a retrial on that issue without that statement. And if there are any further questions, thank you for your time. Thank you. Thanks to all counsel, and thanks to the government as well. And the case will be taken under advisory.